**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN WALLMAR-RODRIGUEZ,**

                              **Plaintiff,**

**-against-**                                               **05-CV-0111**

**FELIX ROMA BAKERY,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

On January 28, 2005, Plaintiff John Wallmar-Rodriguez commenced this action *pro se* claiming employment discrimination based upon his race, national origin, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Section 296 of the New York Human Rights Law, N.Y. Exec. Law § 296 ("HRL"). See Compl. [dkt. #1], Am. Compl. [dkt # 15].[1]  Plaintiff, a Hispanic individual born in Puerto

---

[1] Plaintiff commenced this action by filing a form "Civil Complaint Pursuant to Title VII of the Civil Rights Act, as Amended" that is provided to pro se litigants. See Compl. [dkt. 1]. Because Plaintiff's complaint lacked factual allegations that would have supported his claims of employment discrimination, he was ordered to file an amended complaint. See 02/26/05 Order [dkt. # 3]. When Plaintiff filed his Amended Complaint, he used a form "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" that is also provided to pro se litigants. See Am. Compl. [dkt. # 15]. Plaintiff asserts in the Amended Complaint that he was discriminated "on the basis of national origin in violation of Section 296 of the NYS Human Rights Laws." Am. Compl. ¶ 7. Because Section 1983 claims require state action, see 42 U.S.C. § 1983, and because Plaintiff's pleadings lack any allegation of state action, the Court presumes the claims asserted in the Amended Complaint are brought, at least in part, pursuant to Title VII and/or the FMLA. (The Court would seemingly lack subject matter jurisdiction over the action if only New York HRL claims were asserted).

1

Rico, alleges that he experienced differential treatment and eventual termination from his employment with the Felix Roma Bakery as a result of his race and national origin. See generally Am. Compl. He also asserts that he was sexually harassed by a shift supervisor who purportedly "held a pencil between his [own] legs[,] rubbing up and down as though it were a penis," and who asked Plaintiff personal question about his girlfriend. Id. ¶¶ 3-4. It is also arguable that Plaintiff asserts claims of unlawful retaliation under Title VII and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. See Am. Compl. ¶ 4.[2]

Presently before the Court is Defendant's unopposed Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. See Def.'s Mot. Sum. J. [dkt. # 23].[3] For the reasons that follow, the motion is granted.

## II. Standard of Review

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

[2] On the form Complaint filed by Plaintiff, there is a line to check if alleging Title VII retaliation. Plaintiff did not check this line and did not make any allegation of retaliatory conduct by the employer. See Compl. ¶ 7(D). In the Amended Complaint, however, Plaintiff asserts that "[w]hen I mention[ed] going to human rights" because of a dispute over taking days off to attend his son's medical appointments, "they fired me right there on the spot." Am. Compl. ¶ 4.

[3] On March 6, 2007, Defendant Felix Roma Bakery moved for summary judgment, thus making Plaintiff's reply due on April 10, 2007. Def. Mot. Sum. J. [dkt. # 23]. In so moving, Defendant filed a Notice of Motion; a Memorandum of Law; Local Rule 7.1(a)(3) Statement of Material Facts Not in Dispute; a copy of the Northern District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," and various exhibits and affidavits. See id. Plaintiff has not filed any documents in opposition to Defendant's motion.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Fed. R. Civ. P. 56(e). Even if the motion is unopposed, however, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (Internal quotation marks omitted).

The Local Rules of the Northern District provide a procedure for the resolution of summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3). This procedure places the onus

on the parties to present the evidence that either supports or defeats the motion. A movant must first set forth the undisputed facts that, it contends, entitles it to summary judgment. See N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the non-moving party must "file a response to the [movant's] Statement of Material Facts." Id.  "Any facts set forth in the [movant's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Id. (emphasis in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly even when pro se litigants are involved. See Van Loan v. Hartford Acc. and Indem. Co., 2006 WL 3782709 at *2 (2d Cir. 2006)(deeming movant's properly supported and unopposed allegations admitted by opposing party); N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule7.1(a)(3) statement that "offered mostly conclusory denials of movant's factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003)(holding that the leniency applied in construing a pro se litigant's pleadings does not excuse failure to follow the requirements of Local Rule 7.1(a)(3)).

In short, summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because

evidence supporting the essential elements of the non-movant's claim is lacking. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 332.

### III.  BACKGROUND

Unless indicated otherwise, the following consist of the properly supported facts from Defendant's Local Rule 7.1(a)(3) Statement of Material Facts.  Even though the facts are essentially uncontested, the Court construes them in the light most favorable to Plaintiff, and resolves all ambiguities and draws all reasonable factual inferences in Plaintiff's favor. Michalski v. The Home Depot, Inc., 225 F.3d 113, 115 (2d Cir. 2000).

On May 18, 2003, Plaintiff was hired by Brian Bertoni, Felix Roma Bakery's Production Manager, to work as a line employee in the bakery.  Bertoni attests that he was aware of Plaintiff's race and national origin at the time he hired Plaintiff.   At work, Plaintiff's first shift supervisor was Mark Chapman, and his second shift supervisor was John Arnold.  Plaintiff contends, in conclusory fashion, that Arnold asked Plaintiff "personal questions" about his girlfriend.  See Am. Compl. ¶ 4.  He does not provide any details about the questions such as the subject of the questions, the number of questions, or their frequency.

On November 12, 2003, Plaintiff instigated a confrontation with another employee, Pat Welch.  Bertoni investigated and counseled both employees that the conduct was unacceptable. Plaintiff had a second confrontation with Welch on January 9, 2004 when Welch made a suggestion to Plaintiff about how to perform his job.  Plaintiff told Welch that he wanted to "take [him] out into the parking lot and take care of things."  When Bertoni investigated, he asked Plaintiff if he was looking for a fight. Plaintiff responded: "Yes, if that is what I have  to do.  I'm a man."  Bertoni counseled Plaintiff that fighting was

5

unacceptable behavior.

Plaintiff frequently questioned, in a confrontational and argumentative manner, work instructions given by Second Shift Supervisor Arnold. On December 3 and 4, 2004, Bertoni counseled Plaintiff that this behavior was unacceptable. Nonetheless, Plaintiff continued his confrontational behavior.

Plaintiff frequently came to work 15 minutes late and, at the end of his shift, would take his time gathering his things before he would punch out so he could make up the time he lost at the start of the shift. On January 9, 2004, Arnold asked Plaintiff to end his shift early because work in the bakery was light. Plaintiff gave Arnold a hard time, complaining in a negative and confrontational way about not getting 40 hours of work that week.

In late January 2004, Plaintiff's co-worker Ron Gumaer felt Plaintiff was being "rude and too bossy." The two engaged in a screaming match that was "broken up" by First Shift Supervisor Chapman. Bertoni spoke to both employees about the need to control their behavior.

On February 15, 2004, Plaintiff placed a doughnut aside so that he could eat it at a later time. Apparently, someone else ate it before Plaintiff was able to do so. Plaintiff became belligerent and accusatory with management. Bertoni spoke to Plaintiff again about his negative and confrontational behavior. Nonetheless, in the two weeks following this incident, Plaintiff continued to be confrontational with his co-workers and supervisors. Bertoni felt that Plaintiff's behavior was making his co-workers uneasy and creating unnecessary turmoil in the workplace.

On February 22, 2004, fifteen minutes after arriving at work, Plaintiff asked Chapman if he could leave the line to go to the bathroom. Chapman told Plaintiff to wait

6

until another worker could fill in for him. Plaintiff did not wait and instead walked off the line. This required Chapman to shut down the machine that Plaintiff was working on. When Plaintiff returned from the bathroom he asked Chapman, in a rude and confrontation tone, whether Chapman wanted to look in the toilet to make sure Plaintiff "had gone."

On February 29, 2004, Arnold told Plaintiff to go home early because there was no more work for him that day. Arnold told Plaintiff to punch out before gathering his things. Plaintiff responded by asking Arnold, in an angry and confrontational tone, if he was a racist. Arnold responded that he was not. Plaintiff continued confronting Arnold about the incident for approximately 15 minutes. While this occurred, Arnold sat at a table and tapped a pencil on the table. Plaintiff asserts that Arnold put the pencil "between his [own] legs[,] rubbing up and down as though it were a penis." Am. Compl. ¶ 3. Arnold denies that he did so.

On March 1, 2004, Bertoni recommended to management that Plaintiff be terminated because of his persistent confrontational and aggressive attitude toward his supervisors and co-workers. Bertoni told Plaintiff that day that he was being terminated. Defendant contends that after Plaintiff was advised of his termination, he pulled a business card from his pocket, waved it in Bertoni's face, and said in an angry and aggressive tone: "Don't worry, you don't have to handle it, I've gone to human rights."

Plaintiff recounts a different scenario surrounding his discharge. He asserts that on a break, Bertoni spoke to him about the number of days he had missed from work to

7

attend his son's doctors' appointments. See Am. Compl. ¶ 4.[4]  Bertoni purportedly told Plaintiff that he would be given the next requested day off, but that if he missed one more day after that he would be discharged. Id.  Plaintiff contends that he told Bertoni that if he was fired because he attended a doctor's appointment with his son, he would "go to unemployment, lawyers and Human Rights." Id.  Plaintiff asserts that "[w]hen I mention[ed] going to human rights[,] they fired me right there on the spot." Am. Compl. ¶ 4.

On March 5, 2004, Plaintiff filed a complaint of employment discrimination with the New York State Division of Human Rights. See Compl. attach.  Plaintiff alleged that he was discriminated against at work and discharged on the basis of his race and national origin.  After an investigation, the New York State Division of Human Rights issued a Determination and Order finding no probable cause to believe that Defendant engaged in the complained of discriminatory practices. See Def. Ex. I.  This action followed.

Defendant provides evidence that it employs individuals of various races and national origins, including a Hispanic individual born in Cuba.  It further provides evidence that it accommodated Plaintiff's requests for personal time off to attend his son's medical appointments and an out of town funeral.

## IV. DISCUSSION

### a. Disparate Treatment Claims

Because there exists no direct evidence of discrimination, Plaintiff's claims of

---

[4] Plaintiff alleges in the Amended Complaint that this conversation occurred "a few days after" February 22, 2004. Am. Compl. ¶ 4. Given the context of the conversation as set forth in the text, the Court presumes that it occurred on March 1, 2004, the date of discharge.

disparate treatment must pass a three-step burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) as refined by Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981) and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)(The New York courts "require the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII." ); Clanton v. Schlegel Systems, Inc., 2007 WL 1140444, at * 8 (April 17, 2007 W.D.N.Y.)(noting that New York Human Rights Law claims are analyzed under the McDonnell Douglas framework).

> First, the plaintiff must establish a prima facie case of discrimination. . . . [If he does so] [t]he burden shift[s] to [the defendant] to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . .  This burden is one of production, not persuasion; it can involve no credibility assessment. . . . [If the defendant meets] this burden by offering admissible evidence sufficient for the trier of fact to conclude that [the plaintiff] was fired because of [the legitimate, nondiscriminatory reason] . . . . the McDonnell Douglas framework - with its presumptions and burdens - disappear[s] . . . and the sole remaining issue [is] discrimination vel non.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000)(internal quotations, citations and alterations omitted).

Assuming that Plaintiff's allegations in the Amended Complaint constitute a sufficient prima facie case of disparate treatment discrimination, see Graham v. Long Island Rail Road, 230 F.2d 34, 42 (2d Cir. 2000)(this de minimis burden should be based upon Plaintiff's evidence only), he nonetheless fails under his ultimate burden of establishing that race or national origin played any part in the discharge determination.

Defendant asserts that Plaintiff was discharged because he was disruptive in the

workforce, would not willingly follow his supervisors' instructions, and, despite repeated warnings, continued with his conduct. This articulated reason, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr., 509 U.S. at 509 (emphasis omitted). Consequently, the burden is shifted back to Plaintiff to present proof demonstrating that the proffered reason was not the true reason for the employment decision and that race or national origin was.

Although the presumption of discrimination now drops from the case, the "trier of fact may still consider the evidence establishing plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves, 530 U.S. at 142-43 (quoting Burdine, 450 U.S. at 255 n. 10). However, "[t]o get to the jury, '[i]t is not enough . . . to disbelieve the employer; the fact finder must [also] believe the plaintiff's explanation of intentional discrimination.'" Weinstock v. Columbia Univ., 224 F.3d at 42 (quoting St. Mary's, 509 U.S. at 519). "The plaintiff's opportunity to demonstrate that the employer's proffered reason was false now merges with [his] ultimate burden to persuade the trier of fact that [he] has been the victim of intentional discrimination (*i.e.*, that an illegal discriminatory reason played a motivating role in the adverse employment decision)." Bickerstaff v. Vassar College, 196 F.3d 435, 446-47 (2d Cir. 1999)(citations omitted); see also Reeves, 530 U.S. at 142-43 (Plaintiff bears the burden of demonstrating that the defendant's reasons are a pretext for a racial motivation for its actions).

Plaintiff fails to present evidence from which a reasonable fact finder could conclude that Plaintiff's race or national origin played any part in the discharge

10

determination. The uncontested facts reveal that Defendant employees Hispanic individuals of various national origins. Further, Bertoni, the person who hired Plaintiff and recommended that he be discharged a relatively short time later, was aware of Plaintiff's race and national origin at the time of hire. Under these circumstance, the "same actor inference" applies and diminishes the inference that race or national origin played a part in the discharge determination. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire."); Pinkney v. EMI Music Pub., 2006 WL 2456815, at * 11 (S.D.N.Y. Aug. 22, 2006)("The 'same actor inference' further detracts from [plaintiff's] argument that Defendants' reasons [for plaintiff's discharge] are mere pretext.").

Plaintiff offers nothing other than his subjective beliefs that he was discriminated on the basis of his race and national origin. However, Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." Bickerstaff, 196 F.3d at 456(citation omitted); see id. at 448;[5] Richardson v. New York State Dep't, of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999)(affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the

---

[5] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

11

employer's legitimate reason for terminating her was pretextual).  Accordingly, Defendant's motion to dismiss the disparate treatment claims is granted.

### b.  Sexual Harassment

Plaintiff also asserts that he was subjected to a sexually hostile work environment by his second shift supervisor, John Arnold.   In order to assert an actionable claim for sexual harassment,  Plaintiff must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult ... that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000)(internal quotations and citations omitted); see EEOC v. Rotary Corp., 297 F. Supp.2d 643, 661 (N.D.N.Y. 2003)("Title VII and the New York State Human Rights Law employ an identical standard to determine if the substantive elements of a hostile work environment . . . claim have been proven."). Plaintiff must establish "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)(internal quotations and citations omitted); see Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004).

In determining whether an environment is sufficiently hostile or abusive, courts examine the totality of the circumstances including:

> (1) the frequency of the discriminatory conduct; (2) its severity;
> (3) whether it is physically threatening or humiliating or a mere
> offensive utterance; (4) whether it unreasonably interferes with
> an employee's work performance; and (5) what psychological
> harm, if any, resulted.

La Marco v. New York State Nurses Assn., 118 F. Supp.2d 310, 316 (N.D.N.Y.

2000)(citing Faragher v. Boca Raton, 118 S. Ct. 2275, 2283 (1998)); see Terry v. Ashcroft, 336 F.3d 128, 147-48 (2d Cir. 2003); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 437 (2d Cir. 1999).   The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 788.

Assuming Plaintiff found the work environment hostile, there is no evidence from which a reasonable trier of fact could conclude that Arnold's purported questions about Plaintiff's girlfriend together with the last-day pencil episode rose to the level of objective hostility necessary to support a viable sexual harassment claim.  The allegation about Arnold's questions is conclusory at best and does not establish that the questions were sufficiently continuous and concerted so as to be deemed pervasive and frequent. Further, there is no evidence that the pencil incident amount to more than "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788.  As the Second Circuit has noted,

> Title VII does not establish a "general civility code" for the American workplace. [Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed.2d 201 (1998) ].  Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment. See id.; Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001).

Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004).  While a fact finder could conclude that the pencil incident was vulgar and offensive, Plaintiff has failed to provide evidence from which a reasonable fact finder could conclude that the incident, either in isolation or in the context of the purported "personal questions" about Plaintiff's girlfriend,

13

rose to the level of objective hostility sufficient to support an actionable sexual harassment claim. Accordingly, the claim is dismissed.

### c. Title VII Retaliation

A Title VII retaliation claim is also governed by the McDonnell Douglas burden-shifting framework. See Walker v. New York City Transit Auth., 2001 WL 1098022, at * 7 (S.D.N.Y. Sept. 19, 2001). In order to present a prima facie case of retaliation under Title VII, Plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against Plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199, 205-06 (2d Cir. 2006)(citations and quotation marks omitted).

Even accepting Plaintiff's conclusory allegations as true, he fails to establish sufficient facts to support a prima facie case. According to Plaintiff, he was discharged "on the sport" when he mentioned to Bertoni that he would go to "human rights." This implies that his statement and his discharge occurred contemporaneously. While his threat to go to human rights could constitute protected activity, the uncontested facts reveal that Defendant made the decision to discharge Plaintiff before Bertoni spoke to Plaintiff to tell him that he was discharged. There is no basis upon which to conclude that the employer was aware of the protected activity when it determined to discharge Plaintiff. Consequently, there is no basis upon which to establish a causal connection between

14

protected conduct and the adverse employment action.

Further, and assuming that Plaintiff can established a prima facie case of Title VII retaliation, he fails to present evidence from which a reasonable fact finder could conclude that the employer's articulated reason for his discharge was not the true reason. For the reasons discussed above, Plaintiff fails to offer any evidence to rebut the employer's articulated non-discriminatory reason for his discharge. Accordingly, Plaintiff's claim of Title VII retaliation is dismissed.

### d.  FMLA Retaliation

Claims brought under the FMLA are also subject to the burden shifting approach of McDonnell Douglas Corp. v. Green. See Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). In order to make out a prima facie case of unlawful FMLA retaliation, Plaintiff must establish that:  1) he exercised rights protected under the FMLA;  2) he was qualified for his position;  3) he suffered an adverse employment action;  and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Id.

Assuming, *arguendo*, that Plaintiff can make out a prima facie case under the FMLA, he has produced no evidence from which a jury could reasonably conclude that Defendant's non-discriminatory reason for termination - Plaintiff's unacceptable and confrontational behavior toward his supervisors and co-workers - was pretextual.  Thus, any FMLA retaliation claim asserted in the Amended Complaint must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is

**GRANTED** and Plaintiff's action is **DISMISSED** in its entirety.


**IT IS SO ORDERED.**


Dated:  May 9, 2007

Thomas J. McAvoy
Senior, U.S. District Judge